## UNITED STATES DISTRICT COURT
## DISTRICT OF MASSACHUSETTS

**CIVIL ACTION NO. 1:20-cv-12082-DC**

**FELIX G. ARROYO**
                    **Plaintiff,**

**v.**

**CITY OF BOSTON and MARTY WALSH,**
                    **Defendants.**

## CITY OF BOSTON'S MEMORANDUM OF LAW IN SUPPORT OF ITS MOTION TO DISMISS PURSUANT TO FED. R. CIV. P. 12(B)(6)

### I.        INTRODUCTION

Now comes the Defendants, City of Boston (the "City") and hereby respectfully moves this Honorable Court to dismiss plaintiff's Complaint in its entirety pursuant to Fed. R. Civ. P. 12(b)(6).  As grounds, Defendant states that the Plaintiff has failed to state any claims upon which relief can be granted.

The Plaintiff has filed several claims against the City and Mayor Martin J. Walsh, including Breach of Contract (Count I); Negligence (Count II); Defamation (Count III); Intentional Infliction of Emotional Distress (Count IV); Negligent Infliction of Emotional Distress (Count V); Massachusetts Civil Rights Act, c. 12, §§11H and 11I (Count VI); Breach of Covenant of Good Faith and Fair Dealing (Count VII); and Invasion of Privacy (Count VIII).  For the reasons stated more fully below all of these claims must be dismissed as a matter of law.

## II.  FACTUAL AND PROCEDURAL BACKGROUND[1]

Defendant Martin Walsh was elected Mayor of the City of Boston on November 5, 2013. (Compl. ¶12). He invited the Plaintiff, Felix G. Arroyo to join his cabinet as Chief of Health and Human Services.  (Compl. ¶13).  Felix G. Arroyo began serving as the City of Boston's Chief of Health and Human Services on or about January 6, 2014.  (Compl. ¶9).  Mr. Arroyo had previously served two terms as a Boston City Councilor.  (Compl. ¶10).

On or about July 24, 2017, the Defendants learned that Mr. Arroyo was accused of sexually harassing, assaulting and retaliating against a female subordinate employee.  (Compl. ¶18 and ¶22).  On July 27, 2017, Mr. Arroyo was placed on administrative leave pending an investigation[2]. (Compl. ¶20).  The investigation into the allegations against Mr. Arroyo was conducted by outside counsel.  (Compl. ¶28)[3].  Mr. Arroyo along with the complainant were interviewed by outside counsel as part of the investigation. (Compl. ¶39 and ¶40).  In addition to interviews, which included both Mr. Arroyo and his accuser among others, outside counsel reviewed emails and text messages from parties. (Compl. ¶36 and ¶44).  As a result of the investigation into the allegations set forth by Mr. Arroyo's accuser, the Defendant terminated Mr. Arroyo on August 24, 2017. (Compl. ¶52).

---

[1] Throughout Plaintiff's Complaint he references several published news articles.  The Defendants would ask that the Court take judicial notice of the articles.  Plaintiff relies on these articles throughout his Complaint and because they are published articles, the Court may take judicial notice.  See Town of Nantucket v. Beinecke, 379 Mass. 345, 352 (1979); In re Colonial Mortgage Bankers Corp., 324 F. 3d 12, 15 (1st Cir. 2003) (In considering a motion to dismiss for failure to state a claim, a court is required "to consider not only the complaint but also matters incorporated within it and matters susceptible to judicial notice").

[2] It warrants mentioning that the Defendants did not owe plaintiff the courtesy of an outside investigation.  He was an employee *at will* and the allegations against him (along with the evidence) were compelling even absent an investigation.

[3] The City of Boston retained Stoneman, Chandler and Miller, LLP attorney Kay Hodge to conduct the investigation.  Both the firm and Attorney Hodge specialize in labor and employment law.

## III. ARGUMENT

### A.  Standard of Review

A complaint or count therein must be dismissed where it fails to state a claim upon which relief can be granted.  Fed. R. Civ. P. 12(b)(6).  In considering a motion to dismiss, the Court is obliged to accept the plaintiff's well-pleaded facts as they appear, granting every reasonable inference in the plaintiff's favor.  See Cooperman v. Individual, Inc., 171 F.3d 43, 46 (1st Cir. 1999).  However, this tenet does not apply to legal conclusions.  See Ashcroft v. Iqbal, 556 U.S. 662, 664 (2009).  Mere recitals of the element of a cause of action, supported only by conclusory statements, do not suffice.  See id. (Citing Bell Atlantic Corp. v. Twombly, 550 U.S. 544, 545 (2007)).  "While a complaint attacked by a Rule 12(b)(6) motion to dismiss does not need detailed factual allegations, plaintiff's obligation to provide the 'grounds' of his 'entitlement to relief' requires more than labels and conclusions, and a formulaic recitation of the elements of a cause of action will not do."  Twombly, 550 U.S. at 545 (citations omitted).  A plaintiff must set forth in his complaint "factual allegations, either direct or inferential, regarding each material element necessary to sustain recovery under some actionable legal theory."  Gooley v. Mobile Oil Corp., 851 F.2d 513, 515 (1st Cir. 1988).  "Although pleading standards are minimal, the First Circuit requires more than conclusions or subjective characterizations."  Columbus v. Biggio, 76 F. Supp. 2d 43, 52 (D. Mass. 1999) (citations and quotations omitted).  A complaint will not "suffice if it tenders naked assertion[s] devoid of further factual enhancement."  Twombly, 550 U.S. at 557 (quotations omitted).  "Despite the highly deferential reading which we accord a litigant's complaint under Rule 12(b)(6), we need not credit bald assertions, periphrastic circumlocutions, unsubstantiated conclusions, or outright vituperation."  Martinez v. Arrillaga-Belendez, 903 F.2d

49, 52 (1st Cir. 1990).  As discussed below, Plaintiff's Complaint should be dismissed for failing to meet the Twombly pleading requirement.

### B.  Municipalities cannot be sued for Intentional Torts

As a preliminary matter, pursuant to the M.G.L. ch. 258, it is well established that municipalities such as the Defendant, cannot be sued for intentional torts. "[it]he Act expressly exempts intentional torts from its provisions, and therefore a public employer cannot be sued for the intentionally tortious conduct of its employee. See G.L. c. 258, §10(c). More specifically, General Laws c. 258, §10(c), excludes from the Act "any claim arising out of an **intentional** tort, including assault, battery, false imprisonment, false arrest, **intentional mental distress**, malicious prosecution, malicious abuse of process, **libel**, *slander*, misrepresentation, deceit, **invasion of privacy**, **interference with advantageous relations or interference with contractual relations**." Barrows v. Wareham Fire Dist., 82 Mass. App. Ct. 623, 626, 976 N.E.2d 830, 835 (2012).  It is important to note that this list is not exhaustive. "its use of the word "including" indicates that the enumerated list is representative, not all-inclusive, and that any intentional tort is covered by §10(c). Id *quoting* Connerty v. Metropolitan Dist. Commn., 398 Mass. 140, 149, 495 N.E.2d 840 (1986); Molinaro v. Northbridge, 419 Mass. 278, 279, 643 N.E. 2d 1043 (1995). Therefore, Counts I (Breach of Contract), Count III (Defamation), Count IV (Intentional Infliction of Emotional Distress), Count VI (MCRA); Count VII (Breach of Covenant of Good Faith and Fair Dealing) and Count VIII (Invasion of Privacy) cannot be brought forth against the City of Boston and therefore must be dismissed as a matter of law.

Arguably, an in-depth analysis into each of the claims is not necessary because M.G.L. ch. 258, §10(c) leaves no room for doubt, nonetheless, each claim is addressed thoroughly below based on the facts articulate in plaintiff's Complaint.

**C.  Plaintiff's Breach of Contract Claim and Breach of Covenant of Good Faith and Fair Dealings Claim fail, because there was no contract and plaintiff's termination of employment does not fall within any of the recognized exemptions.**

### a.  Breach of Contract

Plaintiff's first cause of action is an alleged breach of contract claim couched as a violation of 42 U.S.C. § 1983.  It is unclear whether the plaintiff is alleging a substantive or procedural due process argument in asserting that his rights have been violated under §1983.  Nonetheless, under either theory, the plaintiff's §1983 claims against the City must fail.

### i.  Substantive Due Process Analysis

To preserve the distinction between state tort law and constitutional due process violations, a substantive due process claim demands conscience-shocking conduct. "The substantive due process guarantee does not, however, serve as a means of constitutionalizing tort law so as to 'impos[e] liability whenever someone cloaked with state authority causes harm.'" Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006) (*quoting* County of Sacramento v. Lewis, 523 U.S. 833, 848 (1998)). Instead, "[s]ubstantive due process is a constitutional cause of action that leaves the door 'slightly ajar for federal relief in truly horrendous situations.'" Clark v. Boscher, 514 F.3d 107, 112-12 (1st Cir. 2008) (*quoting* Néstor Colón-Medina & Sucesores, Inc. v. Custodio, 964 F.2d 32, 45 (1st Cir. 1992)).  When considering alleged substantive due process violations, the Supreme Court has stated that "the threshold question is whether the behavior of the governmental officer is so egregious, so outrageous, that it may fairly be said to shock the contemporary conscience." Lewis, 523 U.S. at 848.  Importantly, "negligently inflicted harm is 'categorically beneath the threshold' of a constitutional violation." Ramos-Piñero v. Puerto Rico, 453 F.3d 48, 53 (1st Cir. 2006) (*quoting* Lewis, 523 U.S. at 849); *see* Daniels, 474 U.S. at 328 ("[T]he Due Process Clause is simply not implicated by a *negligent* act of an official causing unintended loss of or injury to life, liberty or

property.") (emphasis in original).  In order to establish a substantive due process claim, a "plaintiff must show *both* that the acts were so egregious as to shock the conscience *and* that they deprived him of a protected interest in life, liberty, or property." Higgins v. Town of Concord, 246 F. Supp. 3d 502, 514 (D. Mass. 2017) *quoting* Pagan v. Calderon, 448 F.3d 16, 32 (1st Cir. 2006) (emphasis original) Here the plaintiff has failed to show how the City's or Mayor Walsh's conduct in terminating him was so egregious that it shocked the ordinary conscience.  Further, because he was an *employee at-will*, who was terminated based on his unacceptable conduct towards another employee, plaintiff has again failed to establish a protected property interest.

### ii.   Procedural Due Process Analysis

In order to have procedural due process rights in her employment, the "plaintiff must have had a reasonable expectation, based on a statute, policy, rule, or contract, that he or she would continue to be employed." Higgins v. Town of Concord, 246 F. Supp. 3d 502, 513 (D. Mass. 2017) quoting Concepcion Chaparro v. Ruiz–Hernandez, 607 F.3d 261, 264 (1st Cir. 2010).  As an employee *at-will*, plaintiff did could not have an expectation that he would retain his employment under any circumstances.  Nonetheless, plaintiff relies on the City of Boston's Employee Guide to Benefits, Rights and Responsibilities (*See* Plaintiff's Complaint, Exhibit 1) in a failed attempt to establish an employment contract between the Plaintiff and the City of Boston.

Plaintiff relies on the City of Boston's Employee Guide to Benefits, Rights and Responsibilities (*attached* to Plaintiff's Complaint) in an attempt to establish an employment contract between the Plaintiff and the City of Boston.  First, the Plaintiff was an employee *at-will*. As an employee *at-will*, the plaintiff could be "terminated at any time for any reason or for no reason at all." Upton v. JWP Businessland, 425 Mass. 756, 757, 682 N.E.2d 1357 (1997) (*citations omitted*).  *See* GTE Products Corp. v. Stewart, 421 Mass. 22, 26, 653 N.E.2d 161 (1995),

*citing* Jackson v. Action for Boston Community Dev., Inc., 403 Mass. 8, 9, 525 N.E.2d 411 (1988). The plaintiff has failed to establish that his firing violated public policy, which is the only possible exception to an employee *at-will* being able to challenged his or her termination. In fact, under the circumstances, plaintiff's termination was the only option that was in the public's interest. Therefore, plaintiff's termination on its face is permissible and any claims that arise from that termination should fail.

Second, the employment manual does not constitute an employment contract. Without an employment contract, and absent any exemption, the plaintiff's breach of contract and breach of covenant of good faith and fair dealings must fail. "To prevail on a claim for breach of contract under Massachusetts law, a plaintiff must demonstrate (1) the existence of a valid, binding contract, (2) the terms of which defendant breached, (3) which breach caused the plaintiff to suffer damages." Haglund v. Estee Lauder Companies, Inc., 466 F. Supp. 3d 292, 298 (D. Mass. 2020) *citing* Brooks v. AIG SunAmerica Life Assur. Co., 480 F.3d 579, 586 (1st Cir. 2007). The plaintiff does not assert that he had a valid, binding contract with the City of Boston, because he in fact did not. Employment in Massachusetts is presumed to be at will unless a party demonstrates the existence of an express or implied contract governing the terms and conditions of employment. Day v. Staples, Inc., 555 F.3d 42, 58 (1st Cir. 2009).

To survive a motion to dismiss, a plaintiff must do more than allege, in a conclusory manner, that defendant breached a contractual duty. Buck v. Am. Airlines, Inc., 476 F.3d 29, 38 (1st Cir. 2007). Instead, a plaintiff must describe, with "substantial certainty", the specific contractual promise that defendant breached. Id.; see also Doyle v. Hasbro, Inc., 103 F.3d 186, 194–95 (1st Cir. 1996) (Conclusory statements that 'Hasbro and its executives failed to meet their

contractual requirement,' are insufficient to satisfy the pleading requirements.").   Plaintiff's Complaint is devoid of any "specific contractual" provisions, because there was no contract.

Even, if the plaintiff attempts to argue that there was an implied employment contract between him and the City of Boston, which there was not, there too his claim must fail.  An implied contract is not created by an employee manual where the following factors are met:

> (1) the employer retained the right to unilaterally modify terms; (2) the terms of the manual were not negotiated; (3) the manual stated that it provided only guidance regarding the employer's policies; (4) no term of employment was specified in the manual; and (5) the employee did not sign the manual to manifest assent.
>
> Day v. Staples, Inc., 555 F.3d 42, 58, 59 (1st Cir. 2009) (*quoting* Jackson v. Action for Boston Cmty. Dev., Inc., 403 Mass. 8, 525 N.E.2d 411, 415–16 (1988)).

The employee handbook clearly states on page 4 under the Disclaimer, that "this guide is not to be construed as a contract between the City of Boston and its employees." (*See* Plaintiff's Complaint Exhibit 1).  Plaintiff has failed to establish any of the facts that exempt him from the factors enumerated in Day.  This is not unique to the plaintiff.  The City of Boston's Employee Guide does not establish an employment contract between the City of Boston and *any* of its employees.  Therefore, the Breach of Contract claim must fail.

### b.  Breach of Covenant of Good Faith and Fair Dealings

Absent a contract – either actual or implied, there is no Breach of Covenant of Good Faith and Fair Dealings.  Nor has the plaintiff articulated any facts that support the allegations he makes in Count VII of the Complaint.  In fact, Count VII incorrectly assumes that there was an implied contract between parties, which there was not for the reasons articulated above.  Moreover, the Complaint is devoid of any specific facts, other than self-serving, conclusory statements, that support this (or any of his) claim.

Assuming *arguendo*, that there was an implied contract between the parties, plaintiff still fails to meet either of the two exceptions "To advance a claim for breach of the covenant, a Plaintiff must establish four elements: (1) status as an at-will employee; (2) termination of employment; (3) termination without 'good cause' or in 'bad faith'; and (4) termination with the purpose of depriving an employee of benefits to which he is entitled." <u>Fine v. Guardian Life Insurance Company of America & Park Avenue Securities</u>, 450 F. Supp. 3d 20, 33 (D. Mass 2020) *quoting* <u>Vonachen v. Computer Assoc. Int'l, Inc</u>. 524 F. Supp. 2d, 129, 137 (D. Mass. 2007). Here, there is no question that the plaintiff was a high ranking at-will employee who was terminated because of detailed, credible allegations of sexual harassment and inappropriate behavior towards a female subordinate. Under no circumstances is such conduct considered anything but abhorrent and inexcusable. Therefore, there is no doubt that the Defendant acted in good faith. Finally, there is no evidence whatsoever, nor is it pled, that Defendant deprived plaintiff of any benefits and/or compensation to which he was entitled to prior to his lawful termination.

In some limited instances, Massachusetts law recognizes a breach of the implied covenant of good faith and fair dealing involving termination of at-will employees: "(1) when an employer terminates an employee to avoid payment of future expected compensation for past services or expected benefits (the financial benefit prong) or (2) when employment was terminated contrary to a clearly established public policy." <u>Fine v. Guardian Life Ins. Co. of Am. & Park Ave. Sec.</u>, 450 F. Supp. 3d 20, 28–29 (D. Mass. 2020). Neither of these exceptions are present in this case as discussed above, therefore Count VII (Breach of Covenant of Good Faith and Fair Dealing) of plaintiff's Complaint fails as a matter of law and must be dismissed.

### D. Defamation[4] and Invasion of Privacy

As a threshold matter, any alleged defamatory statements made prior to August 21, 2020 are beyond the three years statute of limitations and must be disregarded "Defendants argue, and the court agrees, that the three-year statute of limitations for torts applies to this defamation claim." See Mass. Gen. Laws ch. 260, § 2A. La Casse v. Aurora Loan Servs. LLC, 2016 WL 4535338 at 7 (D. Mass. Aug. 30, 2016). Additionally, the Defendants cannot be held responsible for any articles that were published based on information provided by alleged "unknown" employees.

Under Massachusetts law, to prevail on a claim for defamation the plaintiff must establish that: (1) the defendant published an oral (slander) or written (libel) statement; (2) the statement was about, and concerned, the plaintiff; (3) the statement was defamatory; (4) the statement was false; and (5) the plaintiff suffered economic loss, or the claim is actionable without proof of economic loss. Noonan v. Staples, Inc. 707 F. Supp. 2d 85, 89 (D. Mass 2010), *quoting* Stanton v. Metro Corp*.*, 438 F.3d 119, 124 (1st Cir.2006) (*citing White v.* Blue Cross & Blue Shield of Mass., Inc*.*, 442 Mass. 64, 66, 809 N.E.2d 1034 (2004)); Massachusetts Sch. Of Law at Andover, Inc. v. Am. Bar Ass'n*,* 142 F.3d 26, 42 (1st Cir.2006) (quoting *McAvoy*, 401 Mass. at 593. There is no evidence that the City of Boston published any statement that was false and/or defamatory. More specifically, with respect to the City, plaintiff focuses on an August 23, 2017 and a September 25, 2017 statement given by the City's Communication Chief, Laura Oggeri to the press. The August

---

[4] Defendants would ask that this Court take judicial notice of the numerous articles that plaintiff refers to in his complaint, which are often mischaracterized, particularly since plaintiff has made them an issue by repeatedly referencing news articles. See Beddall v. State St. Bank & Trust Co., 137 F.3d 12, 17 (1st Cir. 1998) (when "a complaint's factual allegations are expressly linked to—and admittedly dependent upon—a document (the authenticity of which is not challenged), that document effectively merges into the pleadings and the trial court can review it in deciding a motion to dismiss under Rule 12(b)(6)"); see also Watterson v. Page, 987 F.2d 1, 3 (1st Cir. 1993) (courts may review official public records, documents central to a plaintiff's claim, or documents sufficiently referred to in the complaint without converting a motion to dismiss to a motion for summary judgment). To facilitate matter for the Court, the Defendants have compiled as many of the referenced articles as they could find. *See* Exhibit A.

23, 2017 statement stated "These allegations are intolerable and disturbing.  We take the safety and well-being of our employees very seriously and we are working to get to the bottom of this as soon as possible." (Compl ¶48).   There is nothing about this statement that is defamatory. Presumably even the plaintiff would agree that (removing himself from the situation) the nature of the allegations made were in fact very disturbing and under no circumstances could such behavior be tolerated in any environment.  Nor can anyone take issue with an employer being concerned for the safety and well-being of its employees.   Therefore, to couch this neutral statement as defamatory is baseless.  Equally, the September 25, 2017 post-termination statement "Arroyo, who was an employee at will, was terminated after a comprehensive investigation it concluded on Aug. 23" is a statement of fact.  There is nothing inaccurate, despite plaintiff's complaints, about this statement.

The second statement that plaintiff attempts to argue is defamatory was also made to the Boston Globe on August 23, 2017 by the Boston Police Department.  Plaintiff takes issue with the Defendant referring to the plaintiff's accuser as a "victim". (Compl. ¶49).  Plaintiff complains that the use of the word "victim" created the perception with the public that he was guilty of criminal conduct.  He offers no evidence linking this reference to any irreparable harm he suffered and/or damages.  Simply put he cannot.  It is also important to note that by August 23, 2017, there had been numerous articles published, including, comments from plaintiff's representatives.  Notably, the Boston Globe's August 22, 2017 article references the entire Massachusetts Commission Against Discrimination Complaint filed by plaintiff's accuser, which was not provided to them by any representative of the Defendant.  (Compl. ¶46).

To determine whether a statement is an opinion or other protected speech, a court must consider "*all* the words used, not merely a particular phrase or sentence."   *See* <u>Cole v.</u>

<u>Westinghouse Bdcst. Co.</u>, 386 Mass. 303, 309 (1982) (emphasis added).   A court must also consider "all the circumstances surrounding the statement, including the medium by which the statement is disseminated and the audience to which it is published." <u>Id.</u> To that end, context is critically important.   "What constitutes a statement of fact in one context may be treated as a statement of opinion in another, in light of the nature and content of the communication taken as a whole.  Thus, where potentially defamatory statements are published in a public debate, a heated labor dispute, or in another setting in which the audience may anticipate efforts by the parties to persuade others to their positions by use of epithets, fiery rhetoric or hyperbole, language which generally might be considered statements of fact may well assume the character of statements of opinion." <u>Cole</u>, 386 Mass. at 310; *see also* <u>Puccia v. Edwards</u>, 1995 WL 513895, at *3 (Mass. Super. Apr. 28, 1999) (noting that calling someone a racist, without more, amounts to an opinion).

### E.   Negligence, Negligent Infliction of Emotional Distress, Intentional Infliction of Emotional Distress and Massachusetts Civil Rights Act Claims

#### a.   Negligence Claims

Plaintiff's negligence claims are predicated on the investigation done by outside counsel. It is important to note that as an employee *at-will*, particularly a high ranking one, the plaintiff could have been terminated without cause and technically without the need for an investigation. However, the Defendants conducted an investigation in order to gather the facts, in an impartial manner, in order to make a decision.  Although plaintiff is unsatisfied with the results of the investigation that doesn't make the process biased or improper.   Plaintiff ignores the evidence that was provided against him during the course of the investigation and continues to unnecessarily disparage his accuser.

A plaintiff must prove four elements in order to prevail on a negligence based claim: (1) duty; (2) breach of duty; (3) a causal connection between the breach of duty and damages; and (4)

damages. <u>Adams v. Cong. Auto Ins. Agency, Inc.</u>, 90 Mass. App. Ct. 761, 765, 65 N.E.3d 1229, 1234 (2016). *See* <u>Jupin v. Kask</u>, 447 Mass. 141, 146, 849 N.E.2d 829 (2006).   Plaintiff's negligence claims are predicated on his belief that the City of Boston owed him a duty to choose an investigator of his liking to look into allegations of his misconduct.   Contrary to plaintiff's misguided beliefs, the Defendant had no such duty either contractually and/or legally to the plaintiff.   Nor does the plaintiff provide any evidence of such a duty, other than bemoaning that the process, which he participated in, was unfair, because it did not turn out in his favor.   Plaintiff also continues to believe that this process is akin to a criminal trial, referring to exculpatory evidence, cross-examining witnesses that took part in the investigation and asserting that witness statements were false, which completely misses the point of internal investigations and the sensitivity of sexual harassment investigations.

Given that plaintiff has failed to establish – either through evidence or legal standards – that Defendant owed him a duty, the Negligence claims brought forth in his Complaint must be dismissed.

### b. Intentional Infliction of Emotional Distress and Massachusetts Civil Rights Act Claim

Under Massachusetts General Laws ch. 258, §10 (b) and (c), discretionary functions and intentional torts are expressly barred.   Further, Count IV of the Complaint must be dismissed, because it is barred under the exclusivity provision of the Worker's Compensation Act.   Mass. General Law c.152, §24 "An employee shall be held to have waived his right of action at common law or under the law of any other jurisdiction in respect to an injury therein occurring, to recover damages for personal injuries if he shall not have given his employer, at the time of his contract of hire, written notice that he claimed such right...." <u>Simmons v. Merchants Mut. Ins. Co.</u>, 394 Mass. 1007, 1007, 476 N.E.2d 221, 222 (1985). *See also* <u>Bertrand v. Quincy Mkt. Cold Storage &</u>

Warehouse Co., 728 F.2d 568, 572 (1st Cir. 1984).  Count IV must therefore be dismissed a matter of law.

Lastly, to establish a claim under the MCRA, the Plaintiff must prove that his exercise or enjoyment of rights secured by the constitution or laws of either the United States or Massachusetts were interfered with, or attempted to be interfered with, by threats, intimidation, or coercion. Count VI must be dismissed, because there is no available mechanism for imposing municipal liability for MCRA violations. Mass.  Gen.  Laws, ch. 12 §§ 11H and 11I.  The MCRA provides a cause of action where a:

> person or persons, whether or not acting under color of law, interfere by threats, intimidation or coercion, or attempt to interfere by threats, intimidation or coercion, with the exercise or enjoyment by any other person or persons of rights secured by the constitution or laws of the United States, or of rights secured by the constitution or laws of the commonwealth . . . .

Mass. Gen. Laws ch. 12, §§11H and 11I.  The Massachusetts Appeals Court has held that "a municipality is not a 'person' covered by the Massachusetts Civil Rights Act (MCRA), G.L. c. 12, §§11H, 11I," and that this holding applies equally to "individual defendants in their official capacities."  Howcroft v. City of Peabody, 51 Mass. App. Ct. 573, 591–93, 747 N.E.2d 729, 744-45 (2001).  The MCRA further does not impose liability on municipalities based on the actions of individual employees acting in the scope of their employment.  See Chaabouni v. City of Bos., 133 F. Supp. 2d 93, 103 (D. Mass. 2001) (declining "to impose the theory of *respondeat superior* on municipalities" under the MCRA); Sarvis v. Bos. Safe Deposit & Tr. Co., 47 Mass. App. Ct. 86, 96, 711 N.E.2d 911, 920 (1999) ("'[I]t is a widely accepted rule of statutory construction that general words in a statute such as 'persons' will not ordinarily be construed to include the State or political subdivisions thereof.'" (quoting Hansen v. Commonwealth, 344 Mass. 214, 219, 181 N.E.2d 843 (1962)).  Accordingly, Count VI must be dismissed as a matter of law.

**IV.**     <u>**CONCLUSION**</u>

WHEREFORE, for the reasons set forth above, the City of Boston respectfully requests that Plaintiff's Complaint be dismissed in its entirety with prejudice.

Respectfully submitted:

DEFENDANT, CITY OF BOSTON

By its attorney:

Eugene L. O'Flaherty
Corporation Counsel

<u>/s/ Erika P. Reis</u>
Erika P. Reis (BBO#669930)
Senior Assistant Corporation Counsel
City of Boston Law Department
City Hall, Room 615
Boston, MA 02201
(617) 635-4031 (Reis)
Erika.Reis@boston.gov

<u>**CERTIFICATE OF SERVICE**</u>

I, Erika P. Reis, hereby certify that I served a true copy of the above document all parties of record via this court's electronic filing system and upon those non-registered participants via first class mail.

<u>Date</u>:  12/21/2020                         <u>/s/ Erika P. Reis</u>

## **7.1 CERTIFICATE**

I, Erika P. Reis hereby certify that I conferred with Plaintiff's counsel, Anthony Ellison, via telephone conference on **December 3, 2020** regarding the issues raised in this motion. Counsel was informed at that time that new counsel would be imminently taking over the case.  There have been no further discussions, therefore the parties were unable to narrow the issues set forth in this motion.


Date:  12/21/2020                    /s/ Erika P. Reis