# UNITED STATES DISTRICT COURT
# DISTRICT OF MASSACHUSETTS

|  |  |
|---|---|
| FELIX G. ARROYO, | ) ) ) |
| Plaintiff, | ) ) ) |
| v. | ) ) |
|  | ) **Case No. 20-cv-12082-DJC** |
| CITY OF BOSTON and MARTIN J. WALSH, | ) ) ) |
| Defendants. | ) ) ) ) ) |

## MEMORANDUM AND ORDER

CASPER, J.                                                                 June 8, 2021

## I.      Introduction

Plaintiff Felix G. Arroyo ("Arroyo") has filed this lawsuit against Defendants City of Boston ("the City") and the former mayor of the City, Martin J. Walsh ("Mayor Walsh") (collectively, "Defendants") alleging breach of contract (Count I), violation of due process rights pursuant to 42 U.S.C. § 1983 (Count II), wrongful termination (Count IV), negligent infliction of emotional distress (Count V), violation of the Massachusetts Civil Rights Act (Count VI) and breach of the implied covenant of good faith and fair dealing against both Defendants (Count VII) and defamation just against Mayor Walsh (Count III).  D. 21.  Defendants now have moved to dismiss.  D. 7, D. 9.  Plaintiff has moved to amend the complaint, D. 16.  As stated during the motion hearing, D. 20, this Court ALLOWS the motion to amend, D. 16.  The Court has considered the motions to dismiss, D.7, D. 9, as to allegations in the amended complaint, D. 21.  For the

reasons stated below, the Court ALLOWS the motions to dismiss in PART and DENIES them in part.

## II.    Standard of Review

On a motion to dismiss for failure to state a claim upon which relief can be granted pursuant to Fed. R. Civ. P. 12(b)(6), the Court must determine if the facts alleged "plausibly narrate a claim for relief." Schatz v. Republican State Leadership Comm., 669 F.3d 50, 55 (1st Cir. 2012) (citation omitted). Reading the complaint "as a whole," the Court must conduct a two-step, context-specific inquiry. García-Catalán v. United States, 734 F.3d 100, 103 (1st Cir. 2013). First, the Court must perform a close reading of the claim to distinguish the factual allegations from the conclusory legal allegations contained therein. Id. Factual allegations must be accepted as true, while conclusory legal conclusions are not entitled credit. Id. Second, the Court must determine whether the factual allegations present a "reasonable inference that the defendant is liable for the conduct alleged." Haley v. City of Boston, 657 F.3d 39, 46 (1st Cir. 2011) (citation omitted). In sum, the complaint must provide sufficient factual allegations for the Court to find the claim "plausible on its face." García-Catalán, 734 F.3d at 103 (citation omitted).

## III.   Factual Background

The following summary is based upon the allegations in the amended complaint which are assumed to be true for the purposes of resolving Defendants' motions to dismiss. Arroyo served as Chief of Health and Human Services ("HHS") for the City from January 6, 2014 until his termination on August 24, 2017. D. 21 at ¶¶ 9, 12.

At all relevant times during the present action, the City maintained a policy manual, "An Employee Guide to Benefits, Rights and Responsibilities" ("City Employee Manual"), including a policy on the disciplinary process that governs responses to the violation of work regulations or inappropriate off-duty or on-duty employee behavior. Id. at ¶ 16; D. 21-1.

As alleged, the City learned about claims of sexual harassment against Arroyo on or about July 24 and 25, 2017.  Id. at ¶ 15.  On July 27, 2017, the City placed Arroyo on administrative leave pending an investigation into the allegations.  Id. at ¶ 17.  Arroyo was informed by Mayor Walsh's Chief of Staff, Dan Koh ("Koh"), and Corporation Counsel, Eugene O'Flaherty ("O'Flaherty"), that he was placed on administrative leave.  Id.  That same day, O'Flaherty told Arroyo that the allegations were serious, and he should not be thinking about his job, but rather about "keeping himself out of jail."  Id. at ¶ 18.  Arroyo has denied and continues to deny all allegations of misconduct brought forth by Hilani Morales ("Morales").  Id. at ¶ 19.

A July 27, 2017 letter from O'Flaherty informed Arroyo that he was on leave pending investigation of a "serious complaint including allegations of harassment and retaliation," although the City did not inform Arroyo that the investigation specifically involved allegations of sexual harassment or provide notice of any of the specific allegations made against him.  Id. at ¶ 20.    The letter also stated that during administrative leave, Arroyo was "prohibited from having contact with any City employees," which he alleges interfered with his right to present evidence.  Id. at ¶ 21.  The letter further instructed Arroyo to "not take action that could be perceived as retaliatory against anyone who may have information relevant to the City of Boston's investigation" as "[e]ngaging in such misconduct is prohibited and may be grounds for immediate termination."  Id. at ¶ 22.  News of Arroyo's leave was published in an August 1, 2017 Boston Globe story based "on a leak from City Hall."  Id. at ¶ 29.  Arroyo repeatedly requested the details of specific allegations brought against him, as well as the source of the complaint in writing, but the City did not provide the requested information.  Id. at ¶¶ 20, 30.

The City hired attorney Kay Hodge ("Hodge") to conduct the investigation of the allegations against Arroyo.  Id. at ¶ 28.  Arroyo played no role in selecting the investigator, and

Hodge had previously represented the City against workers in various matters before the Massachusetts Civil Service Commission as well as federal and state court. Id. Although Arroyo received a press inquiry on August 7, 2017 revealing that the press was aware of the specific nature and source of the complaint against him, he met all press inquiries with no comment due to the City's demand he refrain from same. Id. at ¶¶ 23, 31. Arroyo alleges that he was not allowed to defend himself, which he claims further damaged his public reputation. Id. at ¶ 31. On August 8, 2017, Hodge confirmed the investigation was confidential and that the City would not be speaking to the press even though a City employee had already leaked information about the investigation. Id. at ¶ 32. After scheduling an interview with Hodge for August 16, 2017, Arroyo, through counsel, requested a copy of the City Employee Manual, the specific allegations against him and name of complainant, evaluations he received from the HHS Leadership Team members in his capacity as Chief, access to his work emails and an affirmative answer in writing of whether the City had expressed a desire or preference to terminate him prior to the completion of the independent investigation. Id. at ¶ 34. Despite the City's failure to fulfill his requests, he remained fully cooperative. Id. About two days prior to the scheduled interview, Arroyo provided the investigator with the names and titles of twenty-five relevant witnesses, most of whom were women and members of the HHS Leadership Team that previously met with him monthly. Id. at ¶ 35. Arroyo also provided Hodge with relevant evidence including evidence of text messages that his accuser sent to another City employee making contradictory and inconsistent allegations against him during the investigation. Id. at ¶¶ 36, 38.

Arroyo participated in an interview with the investigator on August 16, 2017 and denied all allegations of misconduct. Id. at ¶ 40. The next day, August 17, 2017, Morales filed a complaint with the Massachusetts Commission Against Discrimination ("MCAD") and shortly

thereafter shared the complaint with the Boston Globe.  Id. at ¶ 41.  She also provided the newspaper with emails she received from Koh.  Id.  The Globe published a story detailing her allegations on August 22, 2017.  Id. at ¶ 47.  The same day that the Globe article was published, O'Flaherty called Arroyo's attorney to say that Arroyo could resign or be fired.  Id. at ¶ 48.

Arroyo alleges that the City and Mayor Walsh failed to complete the pending investigation before making public statements concerning the matter.  On August 23, 2017, the Globe quoted Mayor Walsh as saying "[n]obody should have that feeling, [coming into] a hostile work environment.  No one should ever have that," when asked generally about sexual harassment.  He described it as "something that bothers [him], "particularly [with] a woman" and expressed not wanting these issues to happen in his administration.  Id. at ¶ 49.  The City's communication chief at the time, Laura Oggeri ("Oggeri") was quoted saying that the allegations were "intolerable and disturbing."  Id. She further added that the City takes "the safety and well-being of [its] employees very seriously" and that the City was "working to get to the bottom" of it "as soon as possible." Id.  Lieutenant Detective Michael McCarthy ("McCarthy") of the Boston Police Department similarly told the Globe that he was "attempting to contact the victim to see if she wanted to file a criminal complaint."  Id. at ¶ 51.

The City terminated Arroyo on August 24, 2017 before having the opportunity to complete his follow up interview scheduled for the next day.  Id. at ¶¶ 54-55.  Oggeri, however, said in an email statement that he was terminated "after a comprehensive internal investigation."  Id. at ¶ 74. The statement was reported by multiple media outlets.  Id.  Variations of this statement were echoed in subsequent publications in the Globe in September 2017 and February 2018 respectively where the City is said to have terminated Arroyo after an internal investigation beginning on July

27 and ending on August 23, 2017.  Id. at ¶ 75.   The City never provided Arroyo with written findings of fact from the investigation.  Id. at ¶ 61.

In October 2017, the City responded to Morales' MCAD complaint stating that it had no evidence that Arroyo committed the acts alleged.  Id. at ¶ 64.  Morales withdrew her MCAD complaint on November 21, 2017.  Id. at ¶ 65.  She filed a civil complaint against Arroyo and the City alleging sexual harassment and retaliation in March 2018.  Id.

As a result of being terminated, Arroyo lost, in addition to his compensation, his health care insurance, dental care benefits, eye care benefits and other benefits guaranteed to him by the terms and conditions of his employment.  Id. at ¶ 89.  As a direct and proximate cause of the results of Defendants' conduct, Arroyo has suffered physical, emotional and economic injuries.  Id. at ¶ 90.  He continues to suffer the harmful reverberations of Defendants' statements and conduct and will continue to suffer monetary damages as a result of the harm to his reputation.  Id. at ¶¶ 91-92.

## IV.    Procedural History

Plaintiffs instituted this action on August 21, 2020 in Suffolk Superior Court.  D. 1-3. Defendants removed the case to this Court on November 20, 2020.  Id.  Defendants now have moved to dismiss.  D. 7, 9.  The Court heard the parties on the pending motions and took these matters under advisement.  D. 20.

## V.    Discussion[1]

### A.    Arroyo's Contract Claims (Counts I and VII)

#### 1.    Breach of Contract claim (Count I)

---

[1] To the extent Defendants moved to dismiss claims alleged in the original complaint, D.1, but not in amended complaint, D. 21, those portions of their motions are denied as moot because Arroyo is not pressing same in the operative, amended complaint.

To state a claim for breach of contract under Massachusetts law, a plaintiff must allege that "a valid, binding contract existed, the defendant breached the terms of the contract and the plaintiff sustained damages as a result of the breach." Young v. Wells Fargo Bank, N.A., 717 F.3d 224, 232 (1st Cir. 2013) (citations omitted). Whether a contract exists is a matter of law for the Court to determine. See Lexington Ins. Co. v. All Regions Chem. Labs, Inc., 419 Mass. 712, 713 (1995). Defendants contend that the complaint fails to state a claim for breach of contract because the City's Employee Manual does not "establish an employment contract between the City of Boston and *any* of its employees," D. 8 at 8, and that Arroyo "does not assert that he had a valid, binding contract with the City of Boston because he in fact did not." Id. at 7.

Arroyo claims that the City's Employee Manual constitutes an enforceable contract. D. 21 at ¶ 97. Under Massachusetts law, whether an employee handbook constitutes an enforceable contract turns on a variety of factors "including its content and the circumstances of its distribution." Campbell v. Gen. Dynamics Gov't Sys. Corp., 407 F.3d 546, 559 (1st Cir. 2005); see Jackson v. Action for Boston Community Development, Inc., 403 Mass. 8, 14-15 (1988) (pointing to circumstances such as whether the manual allows the employer to unilaterally amend the terms;  states that it provides only "guidance"; any course of negotiations over its terms; whether the manual stated a term of employment; any "special attention" the employer drew to the manual; and whether the employee was required to sign, assent-to, or acknowledge the manual's policies as a condition of employment as factors in determining whether manual constituted a contract). Such circumstances identified in Jackson are not "a rigid list of prerequisites," but meant to guide courts when evaluating whether an employee handbook constituted part of an employment contract. O'Brien v. New England Tel. & Tel. Co., 422 Mass. 686, 692 (1996); see McMillan v. Mass. Soc. for Prevention of Cruelty to Animals, 140 F.3d 288, 310 (1st Cir. 1998). Considering

7

such circumstances, a court must determine "the objective reasonableness of an employee's belief that the manual is binding."  Grant v. Target Corp., No. 15-cv-12972-ADB, 2017 WL 2434777, at *4 (D. Mass. June 5, 2017).  Here, the Jackson factors "militate against a finding that the [City Employee Manual] in this case constituted an employment contract."  Lee v. Howard Hughes Medical Institute, 457 F. Supp. 3d 9, 12 (D. Mass. 2020) (allowing motion to dismiss plaintiff's breach of contract claims).

First, the City Employee Manual contains an express disclaimer that "[i]ts provisions are not conditions of employment, and they may be unilaterally modified at any time with or without notice" and that  it "is not construed as a contract between the City of Boston and its employees." D. 21-1 at 6.  Although this disclaimer is not dispositive of the existence of a contract between the parties, this "unambiguous disclaimer," demonstrates the City's "intent that the [manual] was not part of an enforceable employment contract, and because it allows the employer unilaterally to amend the [City Employee Manual], fits squarely under the first Jackson factor."  Lee, 457 F. Supp. 3d at 12; see Day v. Staples, Inc., 555 F.3d 42, 58 (1st Cir. 2009);  Ferguson v. Host Int'l, Inc., 53 Mass. App. Ct. 96, 103 (2001) (highlighting that if an employer "does not want the manual to be capable of being construed by the court as a binding contract. . . [a]ll that need to be done is the inclusion in a very prominent position of an appropriate statement that there is no promise of any kind by the employer contained in the manual").

Second, by its express terms, the City Employee Manual is "informational only," D. 21-1 at 6, and provides guidance only.  Third, there are no allegations or indications in the record otherwise that there were any negotiations over the City Employee Manual between the parties. Fourth, the City Employee Manual expressly notes that its "provisions are not conditions of employment.  Id.  Fifth, there are no allegations or indications otherwise in the record about the

dissemination of the City Employee Manual and other than the allegation that Arroyo "accepted [the] terms" D. 21¶ 97, about whether he was required to sign, assent to or acknowledge the City Employee Manual.  Day, 555 F.3d at 59.  "Given these disclaimers [in the City Employee Manual], the absence of any negotiation over the terms, and the absence of any specified term of employment, [Arroyo] could not reasonably have believed that the employment manual[ ] he . . . was given constituted the terms or conditions of employment, equally binding on employee and employer."  Id. (internal quotation marks and citations omitted).  In the absence of a contract between the parties, Arroyo has not stated a plausible claim for breach of contract.[2]

### 2.   Breach of Implied Covenant of Good Faith and Fair Dealing (Count VII)

Arroyo also asserts a claim for breach of covenant of good faith and fair dealings detailing that the "contract between [him] and the City of Boston included an implied covenant of good faith and fair dealing" that required "Mayor Walsh and the City of Boston to refrain from engaging in conduct that would destroy or injure [his] right to receive the benefits of his contract."  D. 21 at ¶¶ 132-133.  Although Massachusetts generally recognizes that at-will employment can be terminated by either party without reason, the "covenant of good faith and fair dealing is 'implicit in all

---

[2] While the crux of Arroyo's claim concerns the City Employee Manual, D. 21 at 20-21, Arroyo asserts in his opposition that his claims "regarding breach of contract and violation of his due process rights stem from the Mayor's promise that he would be able to hold his job [as long] as the Mayor was in office" aside from "the discipline procedure within the Employment Manual," D. 13 at 3, and alleges in the amended complaint that Mayor Walsh stated that he "was offering the position of Chief of [HHS] to Arroyo for as long as he served as Mayor."  D. 21 ¶ 9.  To extent that Arroyo now is asserting this alleged promise from Mayor Walsh as the basis of a contract, he has failed to show that this promise constitutes even an implied contract.  As Defendants note and as Massachusetts law provides, "employment is presumed to be at-will unless there exists an express or implied contract governing its terms and conditions."  Day, 555 F.3d at 58 (internal citations omitted).  As to any alleged, implied contract from Mayor Walsh's promise to him, he has failed to show that the terms and conditions of same were "sufficiently definite so that the nature and extent of the obligations of the parties can be ascertained, " Thompson v. Sundance Pub., No. 95-0274-B, 1997 WL 1294367, at *3 (Mass. Super. Dec. 15, 1997) (internal citations omitted), and such does not plausibly allege an enforceable contract.

Massachusetts contracts, including contracts for employment at will.'" Artuso v. Vertex Pharms., Inc., 637 F.3d 1, 8 (1st Cir. 2011) (quoting Harrison v. NetCentric Corp., 433 Mass. 465, 473 (2001)).  The plaintiff has the burden of proving lack of good faith, which may be inferred from the totality of the circumstances.  T.W. Nickerson, Inc. v. Fleet Nat'l Bank, 456 Mass. 562, 570 (2010).  Massachusetts law recognizes a breach of the implied covenant of good faith and fair dealing in two limited circumstances involving termination of at-will employees:  (1) when an employer terminates an employee to avoid payment of future expected compensation for past services or expected benefits (the financial benefit prong) or (2) when employment was terminated contrary to a clearly established public policy.  Masso v. United Parcel Serv. of Amer., Inc., 884 F. Supp. 610, 614 (D. Mass. 1995);  Shen v. Biogen Idec Inc., 523 F. Supp. 2d 48, 54 (D. Mass. 2007).  Here, Arroyo does not suggest that the first exception applies.  Arroyo does, however, assert that his termination was against public policy as it sought to punish him for not resigning his position with the City and his refusal to admit to acts that he did not do.  D. 13 at 5. Massachusetts courts have interpreted the public policy exception narrowly.  King v. Driscoll, 418 Mass. 576, 582 (1994);  Masso, 884 F. Supp. at 614.  The exception protects employees for asserting "a legally guaranteed right (e.g., filing a workers' compensation claim) for doing what the law requires (e.g., serving on a jury) or refusing to do what the law forbids (e.g., committing perjury)."  Smith-Pfeffer v. Superintendent of the Walter E. Fernald State Sch., 404 Mass. 145, 149-150 (1989).  Arroyo asserts that he was terminated for his refusal to admit to wrongful acts that he did not commit. At the motion to dismiss stage, this Court finds that Arroyo has sufficiently plead a claim for breach of the implied covenant of good faith and fair dealing under the public policy exception.  Accordingly, this portion of his breach of implied covenant of good faith and fair dealing, Count VII, survives.

B.     <u>Due Process Rights under 42 U.S.C. § 1983 (Count II)</u>

To the extent that Arroyo asserts both a violation of substantive due process and procedural due process, D. 21 at ¶ 99, the Court addresses both claims.

"[T]o assert a valid substantive due process claim, [Arroyo has] to prove that [he] suffered the deprivation of an established life, liberty, or property interest, and that such deprivation occurred through governmental action that shocks the conscience." <u>Clark v. Boscher</u>, 514 F.3d 107, 112 (1st Cir. 2008). Given the at-will nature of his employment, Arroyo has failed to show that he had a property interest in continued employment. <u>Bleeker v. Dukakis</u>, 665 F.2d 401, 403 (1981); <u>see</u> <u>Dea v. Look</u>, 810 F.2d 12, 16 n.3 (1st Cir. 1987) (noting that to show such property interest, "an individual must establish that his expectation of continued employment is supported by a state law or regulation, or is based upon a *mutually* explicit understanding with the employer") (emphasis in original). Given this failure as to the first element, the Court need not turn to whether the conduct he alleges is sufficiently "conscious-shocking." <u>Pagan v. Calderon</u>, 448 F.3d 16, 32 (1st Cir. 2006); <u>see</u> <u>Thomas v. Town of Salisbury</u>, 134 F. Supp. 3d 633, 647 (D. Mass. 2015).

"To maintain a procedural due process claim, a plaintiff must allege that the plaintiff was deprived of constitutionally protected property because of defendants' actions, and that the deprivation occurred without due process of law." <u>Thomas</u>, 134 F. Supp. 3d at 646 (quoting <u>Senra v. Town of Smithfield</u>, 715 F.3d 34, 38 (1st Cir. 2013)). Accordingly, as an initial matter, Arroyo "must have had a reasonable expectation, based on a statute, policy, rule or contract, that he . . . would continue to be employed." <u>Higgins v. Town of Concord</u>, 246 F. Supp. 3d 502, 513 (D. Mass. 2017) (internal quotation marks and citation omitted); <u>see</u> <u>Perkins v. Bd. of Dirs.</u>, 686 F.2d 49, 51 (1st Cir. 1982). Neither sources that Arroyo relies upon, the City Employment Manual, or

alleged promise from Mayor Walsh, for the reasons stated above, give rise to a reasonable expectation that he would continue to be employed.

For the reasons stated above, Arroyo has failed to state claims for violation of substantive due process or procedural due process under Count II.

C.    **Defamation Claim Against Mayor Walsh (Count III)**

Arroyo also brings a claim for defamation against Mayor Walsh.  "To prevail on a defamation claim, a plaintiff must 'establish that the defendants published a false statement about him to a third party that either caused him economic loss or was the type that is actionable without proof of economic loss.'"  Driscoll v. Bd. of Trs. Of Milton Acad., 70 Mass. App. Ct. 285, 295 (2007) (quoting Phelan v. May Dep't Stores Co., 443 Mass. 52, 55-56 (2004)).  If a plaintiff is a public figure, he "must prove, by clear and convincing evidence, that the defendant published the false and defamatory material[s] with actual malice," "that is, with knowledge that [they were] false or with reckless disregard of whether [they were] false or not."  Murphy v. Boston Herald, Inc., 449 Mass. 42 (2007).  Defendants challenge this claim, arguing that the alleged statements are not actionable and that Arroyo has failed to allege actual malice, either of which would mean that he has failed to state a defamation claim against Mayor Walsh.

Taking the second of these challenges first, Mayor Walsh contends that Arroyo must plausibly allege that he acted with actual malice to proceed with his defamation claim.  Even as alleged, Arroyo, an appointed official of the Walsh administration and previously a candidate for mayor, D. 21 ¶¶ 8-11, is a "general public figure" or "at least a limited-purpose public figure,' Lemelson v. Bloomberg L.P., 903 F.3d 19, 23-24 (1st Cir. 2018) given that he was at the center of the controversy underlying the claims here.  Accordingly, to state a defamation claim against Mayor Walsh, he "must point to 'sufficient evidence to permit the conclusion that the defendant

in fact entertained serious doubts as to the truth of his publication,' . . . or 'actually had a 'high degree of awareness of . . . probable falsity.'" Id. at 24 (internal citations omitted).  That is, that Mayor Walsh made these statements knowing that they were false or with reckless disregard of whether they were false.  Murphy v. Boston Herald, Inc., 449 Mass. 42, 49 (2007)  Given that this is a Rule 12(b)(6) motion to dismiss, the Court looks at Arroyo's allegations in this regard to determine whether he has "'la[id] out enough facts from malice might reasonably be inferred,'" such that his allegations "'nudge[ ] his actual malice claim across the line from conceivable to plausible.'"  Lemuelson, 903 F.3d at 24 (internal citations omitted).

Many of Arroyo's allegations as to the Mayor Walsh's actions concern his alleged view of Arroyo as a past and future rival.  See D. 21 ¶¶ 8-9, 52.   "In the context of defamation, the term 'actual malice' does not mean the defendant's dislike of, hatred of, or ill will toward the plaintiff." Stone v. Essex County Newspapers, Inc., 367 Mass. 849, 867-68 (1975); see Dragonas v. Sch. Comm. of Melrose, 64 Mass. App. Ct. 429, 439 (2005) (noting that "[a]lthough spite or ill will can support a finding of malice, it is not enough to show that the defendant merely disliked the plaintiff or that such animosity was part of the defendant's motivation").  Instead, Arroyo must allege facts from which it might be reasonably inferred that Mayor Walsh uttered statements that he knew or should have known were false.  Arroyo has not done so here as the alleged statements.  Even assuming that none of Mayor Walsh's statements are time-barred, D. 10 at 7 n.5, there have been no plausible allegations that any of the alleged statements were false or that Mayor Walsh knew or should have known they were false.  Mayor Walsh's alleged defamatory statements in or about August 2017 included that "[n]obody should have that feeling, [coming into] a hostile work environment" and he did not want "that happening in my administration" (D. 21 ¶ 49); "I don't think we have fundamental issues with people [being] afraid to come forward with any type of . .

. sexual harassment [complaint] (D. 21 ¶ 69); that Morales had been transferred "for the woman's safety" (D. 21 ¶ 70); "[i]f your daughter worked under Felix Arroyo, you would want to fire him too." Id. at ¶ 71; "[a]ny time that we have any type of allegations in the city of Boston where there's somebody that feels threatened or concerned, we're gonna do an investigation and we're gonna take the proper action and that's what we did in this case" (D. 21 ¶ 77).[3] The closest that Arroyo's allegations come to asserting a basis from which to infer actual malice is the City's response on October 4, 2017 to Morales' MCAD complaint that it had no evidence that Arroyo had done what she alleged in the complaint. D. 21 ¶ 64. Even assuming the truth of Arroyo's allegations, as the Court must on a motion to dismiss, there is nothing that about these allegations from which it can be reasonably inferred that Mayor Walsh knew any of these statements were false "when made," which is the critical juncture for the Court's determination. See Murphy, 449 Mass. at 48; Tucker v. Fischbein, 237 F.3d 275, 286 (3rd Cir. 2001).

Even assuming arguendo that Arroyo had plausibly alleged actual malice, the alleged statements above are not actionable. "Statements of pure opinion are constitutionally protected." King v. Globe Newspaper Co., 400 Mass. 705, 708 (1987). "Whether a statement is a factual assertion or an opinion of is a question of law 'if the statement unambiguously constitutes either fact or opinion,' and a question of fact 'if the statement reasonable can be understood both ways.'" Scholz v. Delp, 473 Mass. 242, 250 (2015). To make this determination, the Court must consider the totality of circumstances in which the statement(s) were uttered or published and consider such facts such as the specific language of statement, whether statement is "verifiable," the general

---

[3] Arroyo alleges statements made by other City employees, but the defamation claim is asserted only against Mayor Walsh and not the City, against whom an intentional tort (i.e., defamation) is barred by the Massachusetts Tort Claims Act ("MTCA"), Mass. Gen. L. c. 258, § 1 et seq. Luthy v. Proulx, 464 F. Supp. 2d 69, 76 (D. Mass. 2006).

context of the statement and the broader context in which it appeared as well as any "cautionary terms" that the publisher used.  Id. at 250-51.

Even considering the context in which the statements were made (i.e., media attention to the allegations of sexual harassment against Arroyo), the statements are not (actionable) statements of fact, but (unactionable) expressions of opinion. "A statement that does not contain 'objectively verifiable facts' is not actionable."  Scholz, 473 Mass at 250 (internal citation omitted).   Several are statements of the administration's approach regarding sexual harassment claims in his administration (e.g., "[n]obody should have that feeling, [coming into] a hostile work environment. . . ."; "I don't think we have fundamental issues with people [being] afraid to come forward with any type of . . . sexual  harassment [complaint],") which do not address Arroyo or the allegations against him specifically.  Another expands upon the administration's approach and opines about the action that the City had taken with the complaint against Arroyo (e.g., "[a]ny time that we have any type of allegations in the city of Boston where there's somebody that feels threatened or concerned, we're gonna do an investigation and we're gonna take the proper action and that's what we did in this case") and the seriousness of the allegations against him (e.g., "[i]f your daughter worked under Felix Arroyo, you would want to fire him too").  Even as the statements allegedly were made in response to inquiries about Arroyo matter, they do not contain any objectively verifiable facts, but instead offer Mayor Walsh's opinion regarding his administration's response to this type of complaint and the allegations against Arroyo.  The alleged statement attributed to Mayor Walsh that perhaps come closest to a statement of fact is the one that they moved the accuser "for the women's safety."  Even assuming that this statement, in isolation, was "capable of damaging the plaintiff's reputation in community, which either caused economic loss or is actionable without proof of economic loss," Dragonas, 64 Mass. App. Ct. at 437, which he must

also plausibly allege for this claim, it also fails for the failure to allege plausibly that it was uttered with actual malice as discussed above.

###    D.    <u>Wrongful Termination (Count IV)</u>

Arroyo raises a claim for wrongful termination against Defendants claiming that his termination was "in violation of public policy as it came about in retaliation for [Arroyo's] refusal to resign, his desire to have the City investigate the allegations, and to destroy [his] political reputation." D. 21 at ¶ 122.  Wrongful termination against public policy is a common law claim under Massachusetts law.  See <u>DeRose v. Putnam Mgmt. Co.</u>, 398 Mass. 205, 209 (1986).  As an at-will employee, to raise a cognizable claim, Arroyo must show that his discharge falls within the limited exception prohibiting employers from firing at-will employees "for reasons that violate public policy." <u>Flesner v. Technical Commc'ns Corp.</u>, 410 Mass. 805, 810 (1991).  Such reasons include, for example, terminating an at-will employee for asserting a protected right (e.g., filing for workers' compensation), refusing to commit an illegal act (e.g., perjury) or for doing what the law requires (e.g., serving on a jury) violates public policy.  <u>Id.</u> (citing <u>Smith-Pfeffer</u>, 404 Mass. at 149-50.  "While there is no bright line between protected and non-protected actions, redress is available for employees who are terminated for asserting a legally guaranteed right, for doing what the law requires, or for refusing to do that which the law forbids." <u>Kun v. KinderCare Education LLC</u>, 258 F. Supp. 3d 221, 226 (D. Mass. 2017) (internal citations omitted).  Even interpreting this exception narrowly, as the Court must, <u>id.</u>, for the same reason that Arroyo's breach of the implied covenant of good faith and fair dealing survives, as discussed above, this claim survives.  Accordingly, Count IV survives.

E.        **Negligent Infliction of Emotional Distress (Count V)**

Arroyo asserts a claim for negligent infliction of emotional distress against both Mayor Walsh and the City.  Under the MTCA, public employers are liable for injury caused by the negligent acts of their employees while acting within the scope of their employment.  Mass. Gen. L. c. 258, §§ 2, 10.  Accordingly, "[w]hile public employees are immune from suit based on allegedly negligent conduct, 'liability for the negligent acts of a public employee committed with the scope of employment is visited upon the public employer, and not the employee.'"  Nasir v. Town of Foxborough, No. 19-cv-11196, 2020 WL 1027780, at *5 (D. Mass. Mar. 3, 2020) (quoting Stamps v. Town of Framingham, 38 F. Supp. 3d 146, 159 (D. Mass. 2014)).  In the present case, there is no reasonable dispute that Mayor Walsh was acting within the scope of his employment for the City during the relevant time.  Accordingly, the MTCA bars this claim against him, but the Court considers the claim as against the City.

To state a claim for negligent infliction of emotional distress, a plaintiff must allege "1) negligence; 2) emotional distress; 3) causation; 4) physical harm manifested by objective symptomatology; and 5) that a reasonable person would have suffered emotional distress under the circumstances of the case."  Godette v. Stanley, 490 F. Supp. 2d 72, 81 (D. Mass. 2007) (quoting Payton v. Abbott Labs., 386 Mass. 540, 556 (1982)).  Arroyo's claim fails as to at least two of these requisite elements.  First, Arroyo has failed to allege the first element, negligence, as he has failed to show that the City owes him a duty of care.  To pursue a negligent infliction of emotional distress claim, "[i]t is fundamental that there must be a showing of a duty of care owed to the plaintiff, because 'there can be no negligence where there is no duty.'"  Conley v. Romeri, 60 Mass. App. Ct. 799, 801 (2004) (quoting McHerron v. Jiminy Peak, Inc., 422 Mass. 678, 681 (1996)).  Second, a "failure to allege specific physical harm is fatal to a negligent infliction of

emotional distress claim on a motion to dismiss." Nasir, 2020 WL 1027780, at * 5 (citing Pierre, 741 F. Supp. 306, 313 (D. Mass. 1990)).  In this respect, Arroyo has alleged in skeletal fashion, that as a result of Defendants' conduct, he "has suffered physical, emotional, and economic injuries, D. 21 ¶ 90, but there must be more than "formulaic recitation of the elements" to meet the pleading standard.  Hindle v. Toyota Motor Credit Corp., No. 18-cv-11306-FDS, 2018 WL 6033484, at *4 (D. Mass. Nov. 16, 2018).  For at least these reasons, the Court dismisses Count V.

### F.   Massachusetts Civil Rights Act claim (Count VI)

"To state a claim under the MCRA, a plaintiff must show that (1) his exercise or enjoyment of rights secured by the constitution or laws of either the United States or the Commonwealth of Massachusetts (2) has been interfered with, or attempted to be interfered with, and (3) that the interference or attempted interference was by threats, intimidation or coercion." Amirault v. City of Malden, 241 F. Supp. 3d 288, 304 (D. Mass. 2017).  "Such threats, intimidation, or coercion comprises the essential element of an MCRA violation."  Winfield v. Town of Andover, 305 F. Supp. 3d 286, 300 (D. Mass. 2018); Longval v. Commissioner of Corrections, et al., 404 Mass. 325, 330 (1989).  The Court dismisses this claim for at least two reasons.  As an initial matter, a municipality is not liable for such claim as it is "not a person" under the MCRA, Edwards v. City of Boston, 90 Mass. App. Ct. 1119, 2016 WL 7159538, at *2 (2016), or on a theory of *respondeat superior* under the MCRA.  Chaabouni v. City of Boston, 133 F. Supp. 2d 93, 103 (D. Mass. 2001); Raymond v. City of Worcester, 142 F. Supp. 2d 145, 149 (D. Mass. 2001).  As to Mayor Walsh, "[a]n MCRA claim against an individual municipal employee in his official capacity is also deficient because a municipality cannot be sued under the MCRA and a MCRA claim against, for example, a Mayor in his official capacity is a claim against the municipality."  Wilson v. Town of

Fairhaven, No. 18-11099-PBS, 2019 WL 1757780, at *15 (D. Mass. Mar. 4, 2019) (quoting

Fletcher v. Szostkiewicz, 190 F. Supp. 2d 217, 230 (D. Mass. 2002) (noting that the "MCRA claim

against Defendant in his capacity as mayor is clearly a claim against the city") (internal quotation

marks omitted)).   Also as to both Defendants, this claim fails as to the first element for failure to

allege plausibly a violation of his constitutional rights as discussed above as to the § 1983 claim.

## VI.     Conclusion

For the foregoing reasons, the Court ALLOWS in part and DENIES in part Defendants'

motions to dismiss, D. 7, 9.  The Court dismisses Arroyo's claims for breach of contract (Count

I), § 1983 claim (Count II), defamation (Count III), negligent infliction of emotional distress

(Count V) and violation of MCRA (Count VI).  Arroyo's claims for wrongful termination (Count

IV) and breach of the implied covenant of good faith and fair dealing (Count VII) remain.

**So Ordered.**

/s/ Denise J. Casper
United States District Judge